**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

PHILLIP D. WILLIAMS,                                                                         PETITIONER
ADC # 115975

v.                                            5:11CV00028-DPM-JJV

ARTIS RAY HOBBS, Director,                                                            RESPONDENT
Arkansas Department of Correction

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge D. P. Marshall Jr.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.    Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.    The details of any testimony desired to be introduced at the new hearing in the form

1

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. BACKGROUND

This case was remanded by the United States Court of Appeals for the Eighth Circuit for a determination as to whether Mr. Williams's new evidence meets the "'demanding' actual-innocence standard." (Doc. No. 69 at 2.) Mr. Williams is serving a sentence of life in prison plus 240 months from 2001 convictions for felony capital murder, armed robbery and misdemeanor theft of property. (Doc. No. 16-1.)

Mr. Williams took a direct appeal from his convictions, arguing "the trial court erred by denying his motions for directed verdict" because there was not "substantial evidence to support the judgment on each count." *Williams v. State*, 351 Ark. 215, 218-19, 91 S.W.3d 54, 56 (2002). He also questioned the constitutionality of Arkansas's substantial evidence standard of review and the constitutionality of Rule 5-2(d) of the Rules of the Arkansas Supreme Court. (*Id*.) On December 5, 2002, the Arkansas Supreme Court affirmed Mr. Williams's convictions. On April 7, 2003, he filed a petition for writ of certiorari in the United States Supreme Court; it was denied on June 2, 2003. (Doc. No. 16-2.) On June 6, 2003, the Arkansas Supreme Court issued its mandate. (*Id.*)

On February 7, 2011, Mr. Williams filed a habeas Petition (Doc. No. 1), arguing actual innocence and prosecutorial misconduct. To support these arguments, he attached an affidavit

executed by former co-defendant, Kareem Holloway, who stated that he had "lied at the trial of Phillip Williams" at the direction of the prosecuting attorney and the public defender in order to "avoid getting the death sentence or life in prison." (Doc. No. 2 at 8.) Specifically, Mr. Holloway stated that he lied when he testified that he saw Mr. Williams shoot the victim. Mr. Holloway stated that actually he had run from the house when the shooting started between Mr. Williams and the victim, and he did not see who shot the victim. (*Id.*)

The Respondent counters that Mr. Williams's Petition is time-barred under the Antiterrorism and Effective Death Penalty Act's one-year statute of limitations and the actual innocence exception does not apply to Mr. Williams. (Doc. No. 16.) On May 23, 2011, this Court entered its Proposed Findings and Recommendations (Doc. No. 18), recommending dismissal on the basis of Mr. Williams's untimely filing.

Mr. Williams filed objections (Doc. No. 22) to the Proposed Findings and Recommendations. He alleged that he was entitled to an equitable tolling of the AEDPA one-year statute of limitations given that his attorney, Darrel F. Brown, Jr., failed to make a timely filing pursuant to their representation agreement. On September 8, 2011, the District Court entered an Order (Doc. No. 26) adopting the time-bar analysis, but referred Mr. Williams's newly pled equitable-tolling argument for further development to this Court.

On December 13, 2011, a hearing on the equitable-tolling claim was held before this Court. Mr. Williams testified that he met with attorney Darrel F. Brown, Jr., for an initial consultation on July 8, 2009, shared the contents of Kareem Holloway's affidavit and communicated his desire to pursue any available post-conviction relief. Mr. Brown agreed to investigate any potential post-conviction claims by reviewing trial and appellate transcripts.

The representation agreement (Doc. No. 22 at 7-8) states Mr. Brown would represent Mr.

Williams in a post-conviction proceeding – either the filing of a motion for a new trial or a habeas petition – in exchange for a flat fee of $5,000.00. Both Mr. Williams and Mr. Brown testified during the hearing that payment of the fee was to be made in full before the filing of any pleading would occur.

Mr. Williams and Mr. Brown remained in contact from July 2009 to approximately September 2009. They disagreed, however, as to the status of their relationship during October 2009. Mr. Williams stated that Mr. Brown suddenly stopped communicating with him at that time and would not return his phone calls or respond to his letters. Mr. Brown, on the other hand, testified that from July 2009 to late September 2009, he performed as promised under the agreement by reviewing Mr. Williams's trial and appellate transcripts and that, in his opinion, a motion for new trial was the most appropriate procedural vehicle for Mr. Williams's claims. Mr. Brown said he never agreed that a federal habeas petition should be filed. Mr. Brown also explained that between July 8, 2009 (the date of the initial consultation) and August 28, 2009, Mr. Williams's mother, Pamela Walker, and brother, Michael Perry, had paid only half of the $5,000.00 fee. Mr. Brown further testified that he had notified Ms. Walker, Mr. Perry, and Mr. Williams several times that he would need to payment in full before he could proceed with the Motion for New Trial. Mr. Brown also noted that Ms. Walker had arranged to meet at his office to discuss further payment, but failed to attend that meeting.

By October 2009, Mr. Brown considered Mr. Williams's account to be in default. Mr. Williams disagreed and testified that Mr. Brown refused to accept any more money until he had completed his research on the motion. Mr. Brown, however, stated that he had never refused payment on behalf of Mr. Williams at any time.

After hearing the testimony at the evidentiary hearing and reviewing the record, this Court

concluded in a recommended disposition that Mr. Williams failed to act with reasonable diligence and the doctrine of equitable tolling should not be applied in the case. (Doc. No. 47.) In an Order dated February 9, 2012, the District Court conducted a *de novo* review and adopted this Court's recommended disposition as its own. (Doc. No. 52.) Mr. Williams filed a Motion for Certificate of Appealability (Doc. No. 55) and a Notice of Appeal on March 8, 2012. (Doc. No. 56.) The District Court granted Mr. Williams's Motion for Certificate of Appealability on April 6, 2012. (Doc. No. 58.) The Eighth Circuit issued an Opinion and Judgment on June 7, 2013. (Doc. Nos. 69, 70.) The Mandate was issued on July 9, 2013 (Doc. No. 71) and the District Court referred the case to this Court for a full recommendation, including consideration of Mr. Williams's objection. (Doc. No. 72.)

## II. DISCUSSION

As the Supreme Court of the United States and the United States Court of Appeals for the Eighth Circuit have held, " 'claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.' " *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Burton v. Dormire*, 295 F.3d 839, 848 (8th Cir. 2002); *Meadows v. Delo*, 99 F.3d 280, 283 (8th Cir. 1996).

In *McQuiggin v. Perkins,* 569 U.S. ___, 133 S.Ct. 1924 (2013), the Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar....or expiration of the AEDPA statute of limitations." *(Id.)* See also *Kidd v. Norman*, 651 F.3d 947, 951-52 (8th Cir. 2011). An actual innocence claim, however, may serve as a "gateway" to "resurrect[] procedurally defaulted claims of constitutional error which occurred in the underlying trial," if the petitioner "presents evidence of innocence so strong that a

court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). Ultimately, such gateway claims must be based on evidence that was "*not available* at trial and [that] could not have been discovered earlier through the exercise of due diligence." *Id.* (emphasis added). In this case, Mr. Williams's actual innocence claim, taken on the merits or as a *Schlup* gateway claim, would not be successful. As the Respondent noted, Kareem Holloway's affidavit is not reliable evidence pursuant to *Herrera*, *supra*, and in light of all the evidence at trial, Mr. Holloway's affidavit does not aid Mr. Williams in overcoming his burden of proving that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327.

The Respondent also argues that "actual innocence" in the context of the miscarriage-of-justice exception, means "factual innocence not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623 (1998). But one who is guilty as an accomplice to robbery-murder, as Mr. Williams was on the facts of this case, is legally and factually guilty of capital murder, even though he contends he was not the triggerman. *See Bowman v. Gammon,* 85 F.3d 1339, 1346 (8th Cir. 1996) (even the fact that petitioner did not wield the murder weapon would not prove he is actually innocent of the more broad reaching crime of felony murder); *Tison v. Arizona,* 481 U.S. 137, 154-55 (1987); *Jones v. Arkansas,* 336 Ark. 191, 198-99, 984 S.W.2d 432, 435-36 (1999); see also *Williams*, 351 Ark. at 224-225, 91 S.W.3d at 59-60 (holding as a matter of State law that Petitioner is an accomplice to both the underlying felony of aggravated robbery and the capital-felony murder).

In his trial testimony, Petitioner admits that he fired two shots toward Eldrick Williams, but he did not know who fired the six fatal bullets at Eldrick. *See Williams*, 351 Ark. at 222, 91 S.W.3d at 58. The unspoken implication in Petitioner's testimony is that LaShun Henderson or Derrick

Williams, both of whom he insisted also possessed 9-millimeter handguns, had shot Eldrick Williams, and therefore he must be actually innocent. (Doc. No. 16 at 15.)  However, as the Respondent is quick to address, the Petitioner's position does not prove the actual innocence exception is applicable to him.  Based on the facts of this case, Mr. Williams was guilty as an accomplice to capital felony murder – no matter who fired the fatal shots – and therefore the actual innocence exception does not apply here.

Further, Mr. Williams cannot satisfy the test of the miscarriage-of-justice exception.  Few petitioners are "within the narrow class of cases . . . implicating a fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 315 (1995).  "[T]he miscarriage of justice exception requires prisoners to present 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error.' " *Turnage v. Fabian*, 606 F.3d 933, 941 (8th Cir. 2010) (quoting *Schulp v. Delo*, 513 U.S. at 316 (1995)).

In his objection, Mr. Williams cites the same cases and acknowledges that "the requirements to establish the requisite probability of actual innocence are extraordinarily high." (Doc. No. 49 at 5.)  The Petitioner must establish that (1) *new* and *reliable* evidence that was not presented to the state courts, and (2) that in light of the new evidence it is more likely than not that no reasonable juror would have convicted him.  *See Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997) (emphasis added).  Mr. Williams does not meet these requirements.  Accordingly, his Petition for Writ of Habeas Corpus should be dismissed.

## IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Mr. Williams's new evidence does not meet the actual innocence standard and

therefore, his Petition for Writ of Habeas Corpus (Doc. No. 1) should be DISMISSED with prejudice.

      DATED this 8th day of January, 2014.

                                            _____
                                            JOE J. VOLPE
                                            UNITED STATES MAGISTRATE JUDGE